SHELDON M. SISSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sisson v. Commissioner
Docket No. 653-92
United States Tax Court
T.C. Memo 1994-545; 1994 Tax Ct. Memo LEXIS 553; 68 T.C.M. (CCH) 1078; 68 Trade Cas. (CCH) P1078; October 31, 1994, Filed *553 Sheldon M. Sisson, pro se. For respondent: Steven M. Roth and Mark A. Weiner. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)
6653(b)
6653(b)(1)
6653(b)(2)
6661
1980
$ 39,922.94
$ 1,996.15
--
--
--
--
1981
87,878.17
--
$ 43,939.09
--
--
--
1982
62,158.00
--
--
$ 31,079
[1]
$ 15,539.50
Respondent also determined that petitioner is liable for an increased rate of interest on the deficiencies under section 6621(c) [1] for each year at issue. For 1981 and 1982, respondent further determined, as an alternative to the fraud additions to tax under section 6653(b) and section 6653(b)(1) and (2), that petitioner is liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2). *554 The issues for decision are: [2] *556 (1) Whether petitioner is entitled, for 1980, 1981, and 1982, to deduct $ 18,303, $ 197,018, and $ 113,294, respectively, as his distributive share of partnership losses claimed by Doran-Sisson Realty Ventures (DSRV); [3]
(2) whether petitioner understated his 1981 and 1982 interest income by $ 9,899 and $ 4,375, respectively; (3) whether petitioner is entitled to deduct automobile expenses, including depreciation, of $ 2,160 and $ 9,878 for 1981 and 1982, respectively; (4) whether petitioner is entitled to investment credits of $ 331 and $ 1,414 for 1980 and 1982, respectively; (5) whether petitioner understated his 1981 and 1982 gross income by failing to report "finder's fees" of $ 13,000 and $ 12,985, respectively; (6) whether petitioner erroneously claimed a $ 116 deduction for travel and entertainment expenses on the 1981 Schedule C for his law practice; (7) whether petitioner is entitled to deduct $ 12,000 in 1981 and $ 12,000 in 1982 for consultant's fees paid to Sean Doran; (8) whether, in 1981, petitioner failed to report capital gain of $ 1,029, resulting from the sale of his Foster City, California, residence; (9) whether the statute *555 of limitations bars respondent from assessing any further tax against petitioner for 1980 and 1981; (10) whether petitioner is liable for additions to tax for fraud for 1981 and 1982; (11) whether petitioner is liable for additions to tax for negligence or intentional disregard of rules or regulations for the years at issue; and (12) whether petitioner is liable for an addition to tax for substantial understatement of tax for 1982. For the reasons that follow, we sustain respondent's determinations, except as to the negligence additions to tax for 1981 and 1982, which have become moot by reason of our having sustained respondent's fraud determinations. FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. The stipulation of facts and attached exhibits are incorporated herein. Petitioner resided in Tarzana, California, when the petition in this case was filed. Petitioner is an attorney, admitted to practice in Illinois, California, and this Court. From 1963 through 1974, petitioner was employed as an attorney by the Office of Chief Counsel of the Internal Revenue Service. From 1974 through December 1978, petitioner was employed as a tax attorney by Levenfeld, Kanter, Baskes, and Lippitz (the Kanter law firm), a law firm having offices in Chicago, Illinois, and San Francisco, California. From *557 1979 through July 1980, petitioner was employed as a tax attorney by Margolis, Shatzky and Dunnett (the Margolis law firm), a law firm in Los Gatos, California. Since July 1980, petitioner has been a sole practitioner in Los Angeles, California. In late 1977, petitioner and his longtime companion, Sean Doran, organized Illinois-California Ventures, Inc. (Illinois-California), for the purpose of purchasing, rehabilitating, and selling real property in Illinois. Illinois-California has never been an active corporation, and the corporation has never purchased, renovated, or sold any real property. In early 1978, the Kanter law firm asked petitioner to relocate to its San Francisco law office. Petitioner agreed, and in February 1978, Mr. Doran traveled to the San Francisco area to locate a personal residence for petitioner and himself. Mr. Doran viewed at least six properties before he settled on a house in Foster City, California (the Foster City house). A few days later, petitioner traveled to San Francisco to look at the Foster City house. Petitioner promptly purchased the Foster City house for $ 140,000, and, in March 1978, he and Mr. Doran relocated to San Francisco, moving *558 into the Foster City house. Petitioner paid an additional $ 6,000 to renovate the Foster City house. Sometime in 1978, petitioner and Mr. Doran orally agreed to the formation of DSRV for the purported purpose of purchasing, rehabilitating, and selling real property. Petitioner and Mr. Doran do not have a written agreement with respect to DSRV. The partnership has no separate bank account, nor does it maintain a formal bookkeeping system. However, petitioner does keep a record of "DSRV expenditures" and the receipts attributable thereto. DSRV has never purchased any real property. Neither petitioner nor DSRV has ever rehabilitated or sold any house in which petitioner and Mr. Doran have not resided. In January 1979, petitioner changed employers, becoming an associate at the Margolis law firm. While employed by the Margolis law firm, petitioner was responsible for the legal matters of Gerald Schulman, a major client of the firm. In July 1980, petitioner resigned from the Margolis law firm, and established his own law practice. Between July 1980 and May 1982, petitioner's only client was the Schulman Management Co. The Schulman Management Co. required petitioner to work in *559 its offices in North Hollywood, California, a suburb of Los Angeles (the North Hollywood office). Although petitioner kept some law books and files in his house, he did not maintain a home office for his law practice during the years at issue. From July 1980 through December 1980, petitioner worked at the North Hollywood office during the week, but returned to Foster City on weekends. By early 1981, petitioner and Mr. Doran had decided to move to Southern California. In early 1981, petitioner listed the Foster City property for sale, [4] and on July 15, 1981, he sold the property to Albert and Doris Teller. Petitioner received a $ 63,500 promissory note from the Tellers payable to him, in his individual capacity, for the balance due. The Title/Escrow Settlement sheet reflecting the sale of the Foster City house shows petitioner as seller of the property. DSRV reported the sale of the Foster City house on its 1981 Form 1065 as an installment sale, *560 and treated the gain from the sale as long-term capital gain. Petitioner reported, on his 1981 income tax return, one-half of the gain reported by DSRV as his distributive share of the gain. On May 14, 1981, petitioner purchased a house at 20120 Greenbriar Drive, Tarzana, California (the Greenbriar house). Prior to petitioner's purchase of the Greenbriar house, a geological survey was done, at petitioner's request, on the Greenbriar property to determine the likely damage in the event of an earthquake. On June 3, 1981, petitioner transferred to Mr. Doran a one-half interest in the Greenbriar house. Although the Greenbriar house was habitable when purchased by petitioner, he and Mr. Doran contracted to have it gutted and renovated. The renovation project took approximately 14 months, and included, among other things, retiling the entire house, installing a swimming pool, constructing a den, installing an authentic French chateau fireplace and mantle in the den, replacing the family room fireplace with an authentic English fireplace, replacing the original staircase, installing a second staircase, installing a new driveway, replacing kitchen appliances and bathroom fixtures, replacing *561 aluminum slider windows with French windows, replacing the living room's 12-foot picture window with an 18-foot picture window, installing French doors throughout the house, installing a barbecue, and adding 50,000 bricks to the exterior of the house. Petitioner also had the property around the Greenbriar house landscaped during the renovation. In 1988, petitioner received two real estate appraisals of the Greenbriar house, one at $ 1.5 million and the other at $ 1.2 million. During the renovation of the Greenbriar house, petitioner and Mr. Doran lived in petitioner's house in La Habra, California (the La Habra house). Petitioner had purchased the La Habra house when he worked in Los Angeles for the Internal Revenue Service during the 1960's and early 1970's. Petitioner did not sell the La Habra house when he moved to Chicago because he wanted a place to return to if things did not work out with the Kanter law firm. Petitioner did not rent the La Habra house while he lived in Chicago and San Francisco. In late 1980, petitioner purchased an automobile for the purpose of traveling to and from his house in La Habra and his office in North Hollywood. [5] During the renovation of *562 the Greenbriar house, Mr. Doran used the automobile on a daily basis to drive to and from the La Habra house and the Greenbriar house, stopping each day to drop off and pick up petitioner at his North Hollywood office. Mr. Doran's purpose in driving to the Greenbriar house was to supervise the renovations and to make sure that no one walked off with any of the building materials. In July 1982, petitioner and Mr. Doran moved into the Greenbriar house. Petitioner has never listed the Greenbriar house for sale. Mr. Doran is, by training and experience, an interior decorator. Mr. Doran has no formal legal training, and he has never been an employee of petitioner's legal practice. Sometime in 1980, petitioner and Mr. Doran met Laura Burkacki at a dinner party hosted by a mutual friend. Ms. Burkacki owned and operated a tax and accounting practice in Los Altos, California. Although Mr. Doran and Ms. Burkacki engaged in social conversation during *563 the dinner party, petitioner and Ms. Burkacki used the occasion to discuss, in some detail, investment plans created by Mr. Schulman (the Schulman investment plans) and the possible participation of her clients in one or more of these plans. Petitioner, on subsequent occasions, held follow-up conversations with Ms. Burkacki about the Schulman investment plans, and he sent her literature on the plans. From 1981 through 1982, at least one client of Ms. Burkacki invested in a Schulman investment plan. Mr. Schulman paid Ms. Burkacki a commission for the referral of her client. Mr. Schulman also paid "finder's fees" to petitioner of $ 13,000 and $ 12,985 in 1981 and 1982, respectively, for his help in obtaining Ms. Burkacki's referral. Petitioner deposited these amounts into his personal bank account. Petitioner did not report these "finder's fees" on his 1981 and 1982 income tax returns; instead, DSRV reported them as a specially allocated item to Mr. Doran on its 1981 and 1982 Forms 1065. In 1981, Mr. Doran traveled with petitioner, on two occasions, from Los Angeles to San Francisco for the purpose of attending American Bar Association Tax Section meetings. Although Mr. Doran *564 attended social functions planned for attorneys' spouses and other guests, he did not attend any of the professional meetings. Petitioner deducted $ 116 on his 1981 income tax return, the cost of Mr. Doran's roundtrip airfares. From January 1981 through December 1982, petitioner deposited $ 1,000 per month into Mr. Doran's bank account. Petitioner did not issue a Form 1099 to Mr. Doran for 1981 or 1982, and there is no written agreement between Mr. Doran and petitioner for 1981 and 1982 with respect to the nature, type, or extent of any services to be rendered by Mr. Doran to petitioner. During 1981 and 1982, Mr. Doran had no income other than his receipts from petitioner. In 1981, petitioner received interest income of $ 3,125 from Albert and Doris Teller, $ 3,266.03 from Scudder Investment Trust on account number 809-210-4, and $ 3,507.84 from Scudder Investment Trust on account number 165-467-3. DSRV reported as income, on its 1981 Form 1065, the $ 3,125 received from the Tellers and the $ 3,266.03 received from Scudder Investment Trust on account number 809-210-4. Neither petitioner nor DSRV reported the $ 3,507.84 received from Scudder Investment Trust on account number *565 165-467-3. In 1982, petitioner received interest income of $ 4,375 from the Tellers. DSRV reported this income on its 1982 Form 1065. DSRV reported, on its 1981 Form 1065, interest expense of $ 44,184. This amount is composed of interest on mortgage debt and consumer loans on the La Habra house, the Foster City house, and the Greenbriar house. DSRV reported, on its 1982 Form 1065, interest expense of $ 49,265. This amount is composed of interest on mortgage debt and consumer loans on the La Habra house, the Foster City house, and the Greenbriar house. Petitioner paid property taxes of $ 3,115 and $ 3,583 for 1981 and 1982, respectively, with respect to the Foster City, La Habra, and Greenbriar properties. DSRV claimed a deduction for these amounts on its Form 1065 for each year. Respondent's notice of deficiency makes adjustments in petitioner's favor to allow deductions for the interest and taxes that petitioner claimed as part of his distributive share of DSRV losses for 1981 and 1982. DSRV also reported partnership expenses of $ 194,110 and $ 86,227 claimed as deductions on its 1981 and 1982 Forms 1065. These expenses are costs incurred by petitioner in renovating the *566 Greenbriar house and other expenses relating to the Foster City, La Habra, and Greenbriar houses. Petitioner prepared the following returns: 1981 and 1982 Forms 1065 for DSRV; 1980, 1981, and 1982 Forms 1040 for himself, and 1981 and 1982 Forms 1040 for Mr. Doran. In November 1983, the parties executed a Form 872-A, Special Consent to Extend the Time to Assess Tax, for 1980. In January 1985, the parties executed a Form 872-A for 1981, and in 1986 they timely executed two Forms 872-A for 1982. The Forms 872-A provide that "This agreement ends on the earlier of the above expiration date [of which there is none] or the assessment date of an increase in the above tax that reflects the final determination of tax and the final administrative appeals consideration." On October 2, 1990, the parties entered into a partial agreement for the assessment of additional tax for 1980 and 1981. The agreement provides that "It applies only to the resolution of the issues listed below and not to any other issue. The disposition of all issues which are not listed below is expressly reserved." The issues listed in the agreement are the Jewel partnership, the Cherokee partnership, the Iroquois partnership, *567 the Mohawk partnership, the Gallina partnership, the Pueblo partnership, the Small Tiger partnership, and a mathematical error relating to a Schedule C travel and entertainment expense. On October 12, 1990, petitioner received a letter from Michael R. Putman, an Internal Revenue Service Appeals Officer, (1) thanking petitioner for returning the partial agreement forms, (2) informing petitioner that his case was moving forward, but that he would not be granted another meeting because Mr. Putman believed they had "settled all matters that we can in this matter", and (3) notifying petitioner that a notice of deficiency relating to the unsettled issues could be issued before the end of the year. On January 16, 1991, petitioner sent Mr. Putman a letter referring to the letter of October 12, 1990, and stating that he had not received a notice of deficiency and that he was proceeding on the assumption that a deficiency notice had not yet been issued. Petitioner did not receive a response to that letter, and on February 11, 1991, he sent a certified letter to Mr. Putman repeating the query in the January 16, 1991, letter. OPINION As a preliminary matter, we address an evidentiary issue *568 raised by respondent on brief. Respondent argues, citing Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. on other grounds 162 F.2d 513 (10th Cir. 1947), and its progeny, that we should infer from petitioner's failure to call Mr. Doran as a witness that any testimony Mr. Doran would have proffered would have harmed petitioner's case. We disagree. In Wichita Terminal Elevator Co. v. Commissioner, supra at 1165, the Commissioner determined that the corporate taxpayer, not its shareholders, realized profits from the sale of certain properties. Although the taxpayer had alleged contrary "facts" in its petition, the taxpayer did not introduce "one scintilla of evidence" to support these allegations or otherwise rebut the Commissioner's determination. Id. at 1164-1165. We therefore concluded that the taxpayer had failed to overcome its burden of proof. Id. at 1165. We further stated that Respondent was under no obligation to introduce evidence to rebut a fact alleged but not proven by petitioner. *569 The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable. * * * [Id. at 1165; citations omitted.]
This rule originates in Lord Mansfield's observation that "all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted." Mammoth Oil Co. v. United States, 275 U.S. 13, 51 (1927) (quoting Blatch v. Archer, 1 Cowper 63, 65 (1774)); Kirby v. Tallmadge, 160 U.S. 379, 383 (1895). What Lord Mansfield did not say, but what the Supreme Court added, is that the rule is to be applied cautiously, and only in cases where the evidence is possessed by one party and not accessible to the other party. Mammoth Oil Co. v. United States, supra at 51. This qualification mitigates the rigor with which the rule might otherwise restrict the ability of the parties to present their cases *570 as they choose; the qualification makes clear that, in our judicial system, the trial court's role is to decide cases on the evidence presented, not on imaginable "evidence" not presented. Fuller, The Problems of Jurisprudence 706 (Temp. ed. 1949) ("the moral force of a judgment of decision will be at a maximum when * * * The judge decides the case solely on the basis of the evidence and arguments presented to him"). In the case at hand, petitioner stipulated numerous facts and also testified on his own behalf. Although petitioner decided not to have Mr. Doran testify, Mr. Doran's testimony was available to respondent. If respondent thought Mr. Doran's testimony would be helpful to her case, she was free to have him testify in her case-in-chief or as a rebuttal witness, issuing a subpoena if necessary. Accordingly, the absence of Mr. Doran's testimony is a neutral factor, and we will not infer that his testimony would have been either favorable or unfavorable to petitioner's case. Cf. Estate of Mueller v. Commissioner, T.C. Memo. 1992-284. DSRV
Respondent contends that petitioner is not entitled to deduct his distributive share of losses *571 claimed by DSRV for the years at issue. Respondent argues that DSRV was not carrying on a trade or business with the purpose of making a profit during the years at issue, and that therefore DSRV was not entitled to deduct under section 162 any expenses it incurred from 1980 through 1982. Respondent thus argues that DSRV erroneously claimed losses that cannot be passed through to petitioner. In the alternative, respondent argues that the renovation expenses deducted by DSRV in 1981 and 1982 are nondeductible capital expenditures. Petitioner contends that respondent erroneously determined that he was not entitled to deduct his distributive share of losses claimed by DSRV for the years at issue. Petitioner argues that respondent erroneously determined that DSRV was not carrying on a trade or business with the purpose of making a profit during the years at issue. Petitioner argues that DSRV was engaged in a profit activity, the rehabilitation and sale of real property, and that he therefore is entitled to deduct his share of the losses incurred by DSRV. Section 162(a) provides that a taxpayer may deduct ordinary and necessary expenses paid or incurred in carrying on any trade or *572 business. The key requirement for deductibility under section 162(a) is that the taxpayer engage in, or continue an activity, with the actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Allen v. Commissioner, 72 T.C. 28, 33 (1979). While the taxpayer's profit objective must be bona fide, it need not be reasonable. Dreicer v. Commissioner, supra at 645; Allen v. Commissioner, supra at 33. Whether a taxpayer engaged in an activity for profit is a question of fact, Burger v. Commissioner, 809 F.2d 355, 358 (7th Cir. 1987), affg. T.C. Memo. 1985-523; Lemmen v. Commissioner, 77 T.C. 1326, 1340 (1981), to be determined from all the facts and circumstances, Dreicer v. Commissioner, supra at 645; see also Surloff v. Commissioner, 81 T.C. 210, 233 (1983). Greater weight is given *573 to objective facts than to the taxpayer's mere declaration of intent. Surloff v. Commissioner, supra at 233; see also Polakof v. Commissioner, 820 F.2d 321 (9th Cir. 1987), affg. T.C. Memo. 1985-197. Factors to be considered in determining whether an activity is engaged in for profit include (1) the manner in which the taxpayers carry on the activity, (2) the expertise of the taxpayers or their advisors, (3) the time and effort expended by the taxpayers in carrying on the activity, (4) the expectation that the assets used may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits earned, (8) the financial status of the taxpayer, and (9) the existence of elements of personal pleasure in carrying out the activity. Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726-727 (9th Cir. 1986) (citing sec. 1.183-2(b), Income Tax Regs.), affg. Lahr v. Commissioner, T.C. Memo. 1984-472. *574 These factors are nonexclusive, and not every factor is relevant in every case. Independent Elec. Supply, Inc. v. Commissioner, supra at 727; Vandeyacht v. Commissioner, T.C. Memo. 1994-148. DSRV did not have a bona fide profit objective during the years at issue. DSRV's purported business purpose is to purchase, rehabilitate, and sell real property. However, DSRV has never purchased any real property, and the properties petitioner alleges that he contributed to DSRV were houses in which he and Mr. Doran resided. [6]
*575 Petitioner purchased the Foster City house because he needed a personal residence in the San Francisco area after his employer relocated him from its Chicago office to its San Francisco office. Petitioner purchased the Greenbriar house under similar circumstances; he was looking for a personal residence in the Los Angeles area to be closer to his North Hollywood office. Although petitioner sold the Foster City house in 1981, after he decided to relocate to Los Angeles, petitioner had not put the house on the market before then. Petitioner continues to reside in the Greenbriar house, and it has never been placed on the market. DSRV also did not operate in a businesslike manner during the years at issue. The partnership did not have its own bank account, and it did not maintain a formal bookkeeping system. Neither petitioner nor Mr. Doran had any expertise with respect to the real estate market, and during the years at issue they did not seek substantive advice from those with more knowledge in the field. Even if DSRV had a bona fide profit objective during the years at issue with respect to its real property activities, the expenses incurred in renovating the Greenbriar house *576 are not deductible. Although taxpayers are entitled to deduct costs incurred in repairing a capital asset, sec. 1.162-4, Income Tax Regs., expenditures for permanent improvements made to increase the value of any property must be capitalized under section 263(a) and section 1.263(a)-1(a)(1) and (2), Income Tax Regs.Moss v. Commissioner, 831 F.2d 833, 835 (9th Cir. 1987), revg. on other grounds T.C. Memo. 1986-128; LaPoint v. Commissioner, 94 T.C. 733, 735 (1990). Moreover, expenses that would be deductible if incurred in isolation must be capitalized when incurred pursuant to a renovation plan that includes structural improvements. See Moss v. Commissioner, supra at 839; California Casket Co. v. Commissioner, 19 T.C. 32, 37-38 (1952). The renovation work on the Greenbriar house included structural improvements to accommodate petitioner's personal needs and lifestyle, prolong the life of the house, and increase its value. Because such work does more than merely maintain the property, expenses incurred in renovating the Greenbriar *577 house are capital and therefore not deductible. Compare United States v. Wehrli, 400 F.2d 686 (10th Cir. 1968) with Moss v. Commissioner, supra.
Accordingly, respondent's determinations are sustained. Interest Income
Respondent determined that petitioner failed to report, on his 1981 and 1982 income tax returns, interest income he received from the purchasers of the Foster City house and from his investment accounts with Scudder Investment Trust. Petitioner contends that respondent's determination's are erroneous. Petitioner argues that DSRV, not petitioner, was entitled to this interest, and that DSRV reported much of this interest on its Forms 1065 for 1981 and 1982. Petitioner further argues that any interest income omitted from DSRV's Forms 1065 was omitted inadvertently. "Income is taxed to the one who earns it or otherwise creates the right to receive it and enjoys the benefits of it when paid." Hibler v. Commissioner, 46 T.C. 663, 669 (1966), affd. 383 F.2d 989 (5th Cir. 1967); see also Lucas v. Earl, 281 U.S. 111 (1930). *578 Petitioner incorrectly argues that the payments received from the Tellers belonged to DSRV and that the partnership enjoyed the benefits of those payments. The promissory note on which the payments were made was held by petitioner, in his individual capacity. The payments were made directly to petitioner, and he deposited these payments into his personal bank account. Petitioner therefore had dominion and control of these moneys in his individual capacity. Accordingly, he is liable for income tax thereon. Hibler v. Commissioner, supra.
Petitioner also argues that the bulk of the moneys deposited in the Scudder Investment Trust accounts is attributable to DSRV. However, the Scudder Investment Trust accounts were personal accounts of petitioner. Petitioner exercised control of these accounts, and the moneys deposited therein, in his individual capacity. Accordingly, interest paid on these accounts belongs to petitioner, and he is liable for income tax thereon. Cf. id.
Respondent's determinations on this issue are sustained. Automobile Expenses
Petitioner contends that he is entitled to automobile expense deductions, including *579 depreciation, of $ 2,160 and $ 9,878 for 1981 and 1982, respectively. These expenses were incurred as a result of Mr. Doran's daily drive between La Habra and the Greenbriar property, stopping to drop off and pick up petitioner at his office in North Hollywood. Petitioner argues that the automobiles [7] used for this commute were never used for pleasure, and that these expenses are deductible because Mr. Doran had to be at the Greenbriar property to supervise its renovation and the Schulman Management Co. required petitioner to work in the North Hollywood office building rather than petitioner's home in La Habra. Respondent contends that petitioner is not entitled to his claimed deductions for automobile expenses. Respondent argues that automobile expenses are deductible only if the automobile is used in connection with a trade, business, or income-producing activity, and that petitioner did not so use the automobiles. *580 Respondent argues that Mr. Doran was not engaged in a business activity at the Greenbriar property. Respondent further argues that, even if Mr. Doran was so engaged, the daily drive between La Habra and the Greenbriar property, with the stop to drop off and pick up petitioner at his North Hollywood office, was no more than their commute to and from work. A taxpayer generally is not entitled to deduct costs incurred in commuting between his home and place of employment. Feistman v. Commissioner, 63 T.C. 129, 134 (1974); White v. Commissioner, T.C. Memo. 1972-90; Goodman v. Commissioner, T.C. Memo. 1971-319; secs. 1.262-1(b)(5), 1.162-2(e), Income Tax Regs. Although exceptions to this rule have been recognized where the travel is related to "The exigencies of business rather than personal conveniences and necessities of the traveler", Goodman v. Commissioner, supra (quoting Ford v. Commissioner, 227 F.2d 297, 299 (4th Cir. 1955), affg. T.C. Memo. 1954-209), the fact that the taxpayer chooses to *581 live a substantial distance from his place of employment provides no exception to the general rule, Sanders v. Commissioner, 439 F.2d 296, 298 (9th Cir. 1971), and cases cited therein, affg. 52 T.C 964 (1969). Moreover, in Sanders v. Commissioner, supra at 299, the Court of Appeals for the Ninth Circuit held that necessity cannot be the basis of an exception to the general rule that commuting expenses are nondeductible personal expenses under section 262. Petitioner is not entitled to deduct the automobile expenses he claimed on his 1981 and 1982 income tax returns. Even if we agreed with petitioner that Mr. Doran's "work" at the Greenbriar property amounted to a trade, business, or income-producing activity, the expenses at issue resulted from petitioner's and Mr. Doran's commute to and from their residence and their "places of employment". Petitioner and Mr. Doran chose to live in La Habra and commute to their "places of employment", and Mr. Schulman's requirement that petitioner work in the North Hollywood office building is not an exigency that provides an exception to the general rule *582 that commuting expenses are not deductible under section 262. Cf. Sanders v. Commissioner, supra at 299. Petitioner therefore is not entitled to deduct his and Mr. Doran's commuting expenses. Investment Credits
Petitioner contends that he is entitled to investment credits of $ 331 and $ 1,414 for 1980 and 1982, respectively. Petitioner argues that these investment credits were generated by his purchases of automobiles that he and Mr. Doran used to commute between their La Habra house and their "places of employment". Petitioner therefore argues that the automobiles are tangible personal property for which he is entitled to an investment credit under sections 38 and 48(a). Respondent contends that petitioner is not entitled to an investment tax credit for 1980 or 1982. Respondent argues that petitioner has not shown that he owned any property in those years for which he is entitled to an investment tax credit. Sections 38 and 48(a) provide for a credit against tax for tangible personal property for which depreciation is allowable and which has a useful life of at least 3 years. A depreciation deduction is allowed for the exhaustion, *583 wear, and tear of property used in a trade or business or held for the production of income. Sec. 167(a). According to petitioner's own testimony, he and Mr. Doran used the automobiles at issue only to commute between their house and their "places of employment". The automobiles thus were not used in a trade or business. See secs. 1.262-1(b)(5), 1.162-2(e), Income Tax Regs. Petitioner therefore is not entitled to an investment tax credit with respect to the automobiles. Secs. 38, 48(a). We sustain respondent's determinations on this issue. Finder's Fees
Petitioner contends that respondent erred when she determined that he understated his 1981 and 1982 gross income by failing to report "finder's fees" he received from Mr. Schulman. Petitioner argues that he received those fees from Mr. Schulman on behalf of Mr. Doran, and that he paid the fees to Mr. Doran, who reported them on his 1981 and 1982 income tax returns. Respondent contends that petitioner understated his 1981 and 1982 gross income by failing to report "finder's fees" that he received from Mr. Schulman. As discussed, "income is taxed to the one who earns it or otherwise creates the right to receive it and *584 enjoys the benefits of it when paid." Hibler v. Commissioner, 46 T.C. at 669. Attempts to divert that income to some other person or entity are not recognized for Federal tax purposes. United States v. Basye, 410 U.S. 441, 449 (1973). The record shows that petitioner, not Mr. Doran, spoke to Ms. Burkacki in detail about the Schulman investment plans, and that it was petitioner who encouraged Ms. Burkacki to mention the investment plans to her clients. Mr. Schulman made the "finder's fee" checks payable to petitioner because petitioner held himself out as the person who had encouraged Ms. Burkacki to refer her clients to Mr. Schulman. Petitioner deposited the checks into his personal bank account. Although petitioner argues, on brief, that "by design" he did not tell Mr. Schulman that it was Mr. Doran who had referred Ms. Burkacki to the Schulman investment plans, petitioner did not offer any evidence to support this argument or any plausible explanation of the need to keep Mr. Schulman in the dark about the "source" of the referral. Petitioner also argues that he deposited the checks in his personal bank account *585 because it was from that account that DSRV paid its renovation expenses and that the "finder's fees" were capital contributions of Mr. Doran to DSRV. However, petitioner has offered no evidence that the "finder's fees" were reported as a capital contribution on DSRV's Forms 1065 or otherwise provided any support for his argument. Petitioner's argument is without merit, and we sustain respondent's determinations. Travel and Entertainment Expenses
Petitioner contends that respondent erroneously determined that he is not entitled to a 1981 Schedule C deduction of $ 116, the amount he paid to have Mr. Doran accompany him to American Bar Association Tax Section meetings in San Francisco. Petitioner argues that Mr. Doran's attendance at those meetings served a bona fide business purpose because his presence at social functions planned for the attorneys' spouses and other guests aided petitioner in making new business contacts. Ordinary and necessary expenses incurred in connection with a trade or business generally are deductible. Sec. 162. The deductibility of expenses incurred as a result of a spouse, other relative, or friend accompanying the taxpayer on a business trip *586 depends on whether the accompanying person's presence serves a bona fide business purpose. See United States v. Gotcher, 401 F.2d 118, 124 (5th Cir. 1968); Sheldon v. Commissioner, T.C. Memo. 1961-44, affd. 299 F.2d 48 (7th Cir. 1962); sec. 1.162-2(c), Income Tax Regs. Attending social functions arranged for guests of conference participants is not a bona fide business purpose, even though such activities may contribute to the promotion of the taxpayer's business. Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 661 (1962); Price v. Commissioner, T.C. Memo. 1971-323. Mr. Doran did not attend any of the American Bar Association professional meetings on the trips to San Francisco. While Mr. Doran's presence at the meetings' social functions may have aided petitioner in making new business contacts, Mr. Doran did not otherwise assist petitioner at the meetings. Thus, Mr. Doran's presence on these trips did not serve a bona fide business purpose. Cf. Challenge Manufacturing Co. v. Commissioner, supra at 661; *587 Price v. Commissioner, supra; Sheldon v. Commissioner, supra.Petitioner therefore is not entitled to deduct the costs of Mr. Doran's airfares between Los Angeles and San Francisco. Consultant's Fees
Petitioner contends that he is entitled to deduct "consultant's fees" that he paid to Mr. Doran in 1981 and 1982. Petitioner argues that he paid $ 24,000 ($ 12,000 in 1981 and $ 12,000 in 1982) to Mr. Doran to attend social functions and otherwise aid him in making contacts for his law practice. Petitioner argues that Mr. Doran's activities in this regard were an alternative to other promotions he could have paid for to attract business for his law practice, and that the "consultant's fees" therefore were ordinary and necessary business expenses deductible under section 162. Respondent contends that petitioner is not entitled to deduct the consultant's fees he paid Mr. Doran in 1981 and 1982. Respondent argues that those expenses are neither ordinary nor necessary business expenses under section 162. A taxpayer generally is entitled to deduct ordinary and necessary expenses paid or incurred in connection *588 with a trade or business. Sec. 162. An expense is not deductible under section 162 if it was not paid or incurred for the purpose of carrying on a trade or business. Brizell v. Commissioner, 93 T.C. 151, 156 (1989). In the case at hand, the "consultant's fees" paid to Mr. Doran were not in connection with petitioner's law practice. Mr. Doran has no formal legal training, and during the years at issue, he was not employed by petitioner's law practice. Mr. Doran did not perform any tasks to assist petitioner in the performance, management, or completion of his work. Rather, Mr. Doran supported petitioner's promotion of his law practice at the ancillary social functions he attended. Such conduct of a relative or friend, while commendable, is not an activity in connection with a taxpayer's trade or business. Cf. Challenge Manufacturing Co. v. Commissioner, supra at 661 (spouse's presence at social functions taking place on business trips does not serve a bona fide business purpose); Sheldon v. Commissioner, supra (same). Petitioner accordingly is not entitled to deduct "consultant's *589 fees" he paid to Mr. Doran in 1981 and 1982. Capital Gain
Respondent contends that petitioner failed to report, on his 1981 income tax return, 50 percent of the gain from his sale of the Foster City house. Respondent argues that petitioner, not DSRV, sold the Foster City house in 1981. Respondent therefore argues that 50 percent of the gain from the sale did not pass through DSRV to Mr. Doran as reported on the tax returns filed by DSRV and Mr. Doran for 1981. Petitioner contends that respondent incorrectly determined that he sold the Foster City house in 1981. Petitioner argues that when the Foster City house was sold in 1981, it was DSRV, not he, who sold the house. Petitioner argues that he contributed the Foster City house to DSRV before 1981. Petitioner accordingly argues that his distributive share of the gain from the house was only 50 percent of the total. Income derived from property holdings is taxed to the person owning the property. Spickler v. Commissioner, T.C. Memo. 1986-598. Although petitioner argues that the deed to the Foster City house was changed to show DSRV as the owner of record, see supra note 6, the evidence *590 in this case shows that he did not transfer the property to DSRV. Petitioner held himself out to be the owner of the Foster City house when he sold it in 1981. The Title/Escrow Settlement sheet evidencing the 1981 sale of the Foster City house to the Tellers shows petitioner to be the seller of record. The Tellers' promissory note was payable to petitioner in his individual capacity. Petitioner personally received the payments on the note, and he deposited the payments into his personal account. On this record, we find that petitioner owned the Foster City house when it was sold to the Tellers in 1981. Petitioner therefore is personally liable for the tax thereon. Respondent's determination is sustained. Statute of Limitations
Notwithstanding the above, petitioner argues that the statute of limitations precludes respondent from assessing any additional tax for 1980 and 1981. Petitioner argues that the period of limitations for assessment of additional taxes for 1980 and 1981 expired before respondent mailed him the statutory notice of deficiency. [8]
*591 Respondent contends that the period of limitations for assessing additional tax against petitioner for 1980 and 1981 has not expired. Respondent argues that the parties had agreed to extend the period of limitations indefinitely, and that the agreement had not terminated before the notice of deficiency in this case was issued. In the alternative, respondent argues that the fraud exception to the period of limitations applies for 1981. Respondent bears the burden of proving facts to establish exceptions to the usual 3-year statutory period of limitations. Bardwell v. Commissioner, 38 T.C. 84, 92 (1962), affd. 318 F.2d 786 (10th Cir. 1963); Reis v. Commissioner, 1 T.C. 9, 12 (1942), affd. 142 F.2d 900 (6th Cir. 1944); Texas Speed Distributors, Inc. v. Commissioner, T.C. Memo. 1993-446. a. Extension by Agreement
The Commissioner generally has 3 years from the date a tax return is filed to assess a tax. Sec. 6501(a). However, the taxpayer and the Commissioner may, by written consent executed before the period of limitations has *592 expired, agree to extend the time in which a tax may be assessed. Sec. 6501(c)(4). A consent to extend the period of assessment is not a contract, but a unilateral waiver of a defense by the taxpayer. Grunwald v. Commissioner, 86 T.C. 85, 89 (1986), and cases cited therein. However, contract principles are significant, inasmuch as section 6501(c)(4) requires that the parties enter a written agreement to the extension. Id.
Petitioner does not dispute that the parties timely executed Forms 872-A, extending the period of limitations for 1980 and 1981. Rather, petitioner argues that these extensions of time terminated when he received Mr. Putman's letter of October 12, 1990. Petitioner argues that Mr. Putman's letter was notice that respondent's Appeals Office had concluded their consideration of his 1980 and 1981 tax years. Respondent, on the other hand, argues that the letter from Mr. Putman was not sufficient to terminate the Forms 872-A. In Grunwald v. Commissioner, supra at 89, we held that a letter from an Appeals officer was not sufficient to terminate the Forms 872-A because it did not indicate the *593 Commissioner's intent to terminate the period of limitations on assessment, the kind of tax, and the tax periods for which it applies. In petitioner's case, the letter from Mr. Putman, by referring to waiver forms returned by petitioner, arguably indicates the type and nature of the tax and the tax period at issue. However, the letter does not indicate any intention on respondent's part to terminate the period of limitations on assessment or further consideration of the issue by the Appeals officer. To the contrary, Mr. Putman stated that "I have to move the case forward" and that he expected to issue a notice of deficiency relating to the unsettled issues before year's end. Moreover, petitioner's inquiries of Mr. Putman in January and February 1991 demonstrate that at those times he interpreted the letter to indicate no such intention on respondent's part. Petitioner accordingly did not receive notice of final administrative consideration by the Appeals officer. Thus, petitioner's argument that the period of limitations for his 1980 and 1981 tax years had expired is without merit. b. Fraud Exception
Section 6501(c)(1) provides that, in the case of a false or fraudulent *594 return, the tax may be assessed at any time. Fraud is an "intentional wrongdoing on the part of the taxpayer motivated by a specific purpose to evade a tax known or believed to be owing." Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); see also Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992); Cox v. Commissioner, T.C. Memo. 1993-559. To establish fraud, respondent must show, by clear and convincing evidence, (1) that petitioner underpaid his Federal income tax for 1981 and (2) that some part of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b); Bagby v. Commissioner, 102 T.C. 596, 607 (1994); Chin v. Commissioner, T.C. Memo. 1994-54. Whether fraud exists is a factual question that we decide after reviewing the entire record. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992). 1. Underpayment of Income Tax
Respondent has affirmatively established that petitioner failed to report finder's fees he earned during 1981. See supra *595 pp. 24-26. Petitioner failed to report, on his 1981 income tax return, capital gain of $ 1,028.68, resulting from the 1981 sale his Foster City residence. See supra pp. 29-30. Petitioner also claimed erroneous deductions in 1981 for "losses" incurred by DSRV, automobile expenses, travel and entertainment expenses, and consultant's fees. See supra p. 15-20, 21-23, 26-27, 27-29. Accordingly, respondent has shown, by clear and convincing evidence, that petitioner underpaid his taxes for 1981. 2. Fraudulent Intent
Respondent also is required to show that petitioner's underpayment of tax was "due to fraud". This requires proof of specific intent of the taxpayer to evade a tax believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax. Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). While fraudulent intent will not be imputed or presumed, Shaw v. Commissioner, 27 T.C. 561, 569-570 (1956), affd. 252 F.2d 681 (6th Cir. 1958), *596 it may be proved by circumstantial evidence, Niedringhaus v. Commissioner, supra at 210; Rowlee v. Commissioner, supra at 1123; see also Spies v. United States, 317 U.S. 492 (1943). Over the years, courts have relied on various kinds of circumstantial evidence to support a determination of fraudulent intent. These "badges of fraud" include: (1) Substantial understatement of income; (2) inadequate books and records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) filing false Forms W-4; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal illegal activity. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Niedringhaus v. Commissioner, supra at 211. These "badges of fraud" are nonexclusive, Niedringhaus v. Commissioner, supra at 211, *597 and the taxpayer's education and sophistication are relevant to the determination of fraud, Wheadon v. Commissioner, T.C. Memo. 1992-633. Petitioner understated his income on the returns he filed for 1980, 1981, and 1982. While these understatements of income, standing alone, are not enough to show fraudulent intent, Webb v. Commissioner, supra at 379, the consistent and substantial understatement of income is strong evidence of an intent to evade taxes, Adler v. Commissioner, 422 F.2d 63, 66 (6th Cir. 1970); Kashat v. Commissioner, 229 F.2d 282, 285 (6th Cir. 1956), revg. in part and remanding a Memorandum Opinion of this Court. Moreover, the record in this case is replete with other indicia of fraud. Petitioner has a legal education and was a practicing tax attorney during the years at issue. Petitioner, as an experienced tax attorney, obviously understood and fully appreciated his legal obligations to correctly report income and to pay taxes on that income. Petitioner nevertheless disregarded these obligations, by conceiving and carrying out various *598 schemes to misdirect income and mischaracterize his expenses. Petitioner intentionally misdirected to Mr. Doran income that petitioner had earned. The record shows that petitioner, not Mr. Doran, spoke to Ms. Burkacki in detail about the Schulman investment plans and that it was petitioner who encouraged Ms. Burkacki to mention the investment plans to her clients. Petitioner's representations to Mr. Schulman and his act of depositing the checks in his personal bank account were consistent with this view. Petitioner nevertheless attempted to avoid paying tax on the "finder's fees" Mr. Schulman paid to him by directing the income, for tax purposes, to Mr. Doran. The erroneous deductions that petitioner claimed on his 1981 income tax return also resulted from his conception of and participation in a sophisticated scheme to conceal his income. Petitioner used his "participation" in DSRV to misrepresent as trade and business expense the expenses he incurred in renovating his personal residence. Petitioner claimed erroneous business deductions for automobile expenses, including investment credits and depreciation, even though he had prior knowledge that commuting costs are nondeductible *599 personal expenses. See generally White v. Commissioner, T.C. Memo. 1972-90 (case where Mr. Sisson, as counsel for the Commissioner, successfully argued that commuting costs were nondeductible personal expenses); Goodman v. Commissioner, T.C. Memo. 1971-319 (same). In summary, petitioner's substantial understatements of income over a 3-year period, his intentional misdirection of income, his deliberate mischaracterizations of expenses, against the background of his legal education and experience and overall tax sophistication, are clear and convincing evidence of his fraudulent intent to evade taxes. Cf. Wheadon v. Commissioner, supra. Respondent accordingly has also established that the fraud exception applies to prevent the expiration of the period of limitations on assessment of tax for 1981. Additions to Tax
a. Fraud
Respondent determined that petitioner is liable for additions to tax for fraud under section 6653(b) for 1981 and section 6653(b)(1) and (2) for 1982. [9] The definition of fraud for purposes of section 6653 is the same as the definition of fraud for the *600 purpose of extending the period of limitations under section 6501(c). Estate of Temple v. Commissioner, 67 T.C. 143, 164 (1976); Pennybaker v. Commissioner, T.C. Memo. 1994-303. Having concluded that respondent has shown petitioner's fraud for 1981, see supra pp. 33-37, we consider whether petitioner is also liable for fraud additions for 1982. *601 We have discussed petitioner's failure to report income that he received from Mr. Schulman in 1982. See supra pp. 24-26. We also have discussed how he erroneously deducted "losses" incurred by DSRV, automobile expenses, travel and entertainment expenses, and "consultant's fees" paid by him in 1982. See supra pp. 15-20, 21-23, 26-27, 27-29. Accordingly, petitioner underpaid his taxes for 1982. The omitted income and erroneous deductions claimed in 1982 resulted from the various schemes that petitioner had conceived and carried out in prior years. See supra pp. 35-37. Inasmuch as we have concluded that these circumstances are sufficient to prove fraud for 1981, we find that petitioner's entire underpayment in 1982 was due to fraud. We accordingly sustain respondent's determination that petitioner is liable for the fraud additions to tax for 1981 and 1982. b. Negligence
Respondent also determined that petitioner is liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a) for 1980 and, as an alternative to the additions to tax for fraud, under section 6653(a)(1) and (2) for 1981 and 1982. [10] Inasmuch *602 as petitioner is liable for fraud additions to tax for 1981 and 1982, see supra pp. 37-39, he is not liable for the additions to tax for negligence or intentional disregard of rules or regulations pursuant to section 6653(b) for 1981 and section 6653(b)(3) for 1982. Cox v. Commissioner, T.C. Memo. 1993-559. *603 For 1980, section 6653(a) provides for an addition to tax equal to 5 percent of the underpayment in tax if any part of such underpayment is due to negligence or intentional disregard of rules and regulations. Negligence is a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do in a similar situation. Niedringhaus v. Commissioner, 99 T.C. at 221. The taxpayer's experience and knowledge are considered when determining whether he was negligent or intentionally disregarded rules and regulations. DeRochemont v. Commissioner, T.C. Memo. 1991-600. In the case at hand, petitioner claimed an investment tax credit for the automobile he purchased in 1980 for the purpose of commuting to and from work in the following years. Thus, the automobile was not used in a trade or business, see supra pp. 21-23, and was not depreciable property on which petitioner was entitled to investment tax credit. Secs. 38, 48(a). Petitioner was a practicing tax attorney during the years at issue, and had prior knowledge that an automobile purchased for the purpose of commuting to and from work is not *604 property used in a trade or business subject to depreciation. see supra p. 36. Accordingly, petitioner's claim that he was entitled to an investment tax credit for the automobile was not only negligent, but also amounted to intentional disregard of rules or regulations. Cf. DeRochemont v. Commissioner, supra.Petitioner is liable for an addition to tax for negligence equal to 5 percent of the underpayment in tax for 1980. Sec. 6653(a). c. Substantial Understatement of Tax
Respondent also determined that petitioner is liable under section 6661 for an addition to tax for substantial understatement of tax for 1982. Section 6661(a) provides for an addition to tax of 25 percent of the amount of any underpayment in tax attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement of tax is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). An understatement of tax, for purposes of section 6661, is the excess of the tax required to be shown on the return over the *605 tax actually shown on the return, reduced by any rebates. Sec. 6661(b)(2)(A). The amount of the understatement is reduced by the portion attributable to the tax treatment of an item by the taxpayer if there is or was substantial authority for such treatment, or an item with respect to which the relevant facts affecting the tax treatment were adequately disclosed. Sec. 6661(b)(2)(B). Petitioner did not show that there was substantial authority or disclosure with respect to any item; the understatement for 1982 was substantial. Section 6661(c) provides that if the taxpayer shows there was reasonable cause for the understatement of tax and that he acted in good faith, the Secretary may waive all or part of the addition to tax under section 6661(a). The taxpayer establishes reasonable cause and good faith if he shows that (i) the understatement relates to factual errors inadvertently included in his business records, (ii) the records generally indicate reasonable cause and good faith, and (iii) he had reasonable controls and procedures designed to identify factual errors. Sec. 1.6661-6(b), Income Tax Regs.
We review the Secretary's denial of a waiver of section 6661 additions *606 to tax for abuse of discretion. Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988); Vandeyacht v. Commissioner, T.C. Memo. 1994-148. Petitioner has the burden of proof on this issue. Rule 142(a). To meet this burden petitioner generally must show (i) that he requested a waiver under section 6661(c), (ii) that respondent refused that request, Klieger v. Commissioner, T.C. Memo. 1992-734 and the cases cited therein, and (iii) that reasonable cause and good faith are so clear that respondent's refusal to waive the additions to tax was arbitrary, capricious, or without sound basis in fact, Cramer v. Commissioner, 101 T.C. 225 (1993); Mailman v. Commissioner, supra at 1084. Petitioner has not shown that he requested waivers under section 6661(c) and that respondent denied that request. Under the circumstances, we do not assume that respondent exercised her administrative discretion under section 6661(c) and refused waivers. Petitioner therefore has not met his burden on this issue. Cf. Klieger v. Commissioner, supra. *607 Even if petitioner had requested waivers, we would hold that respondent did not abuse her discretion in refusing them. Petitioner intentionally misdirected to Mr. Doran income that petitioner had earned, and intentionally mischaracterized personal expenses as legitimate trade or business expenses. In these circumstances, petitioner cannot establish that the understatement arose from his inadvertent factual errors, in his business records or otherwise, or that his records contain indications of reasonable cause and good faith that could lead to a contrary conclusion. Accordingly, respondent's continuing determination of the section 6661(a) addition to tax is not arbitrary or capricious or without sound basis in fact. We therefore sustain respondent's determination. To reflect the foregoing, An appropriate order will be issued. Footnotes
1. 50 percent of the interest payable with respect to the portion of the underpayment attributable to fraud.↩
1. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties have agreed that they will be bound by a final decision, as defined by sec. 7481, in Wolverine, Ltd. v. Commissioner, docket No. 26539-90, with respect to respondent's disallowance of Schulman partnership losses claimed by petitioner for the years 1980-82. Respondent concedes on brief that any increased rate of interest under sec. 6621(c) applies only to those portions of the deficiencies attributable to the disallowed Schulman partnership losses. Accordingly, resolution of the increased interest issue under sec. 6621(c) depends on the final decision in Wolverine, Ltd. v. Commissioner, T.C. Memo. 1992-669↩, on appeal (9th Cir., Apr. 2, 1993).
3. Respondent concedes that, for 1980, petitioner is entitled to Schedule A deductions for taxes and interest paid in the amount of $ 18,303 that petitioner claimed as his distributive share of DSRV loss.↩
4. Prior to 1981, petitioner had not listed the property for sale.↩
5. Petitioner purchased a second automobile for this purpose in 1982.↩
6. We are not convinced that petitioner did contribute the Foster City and Greenbriar houses to DSRV. Although petitioner argues that the deed to the Foster City house, a document not introduced into the record in this case, was changed to show DSRV as record owner, the facts are that petitioner was the seller of record when the Foster City house was sold to the Tellers in 1981. The Title/Escrow Settlement sheets, the Teller's promissory note, and the payments on that note are evidence of this fact. With respect to the Greenbriar house, the facts are that Mr. Doran, not DSRV, received a one-half interest in the Greenbriar house from petitioner. There is no evidence that DSRV holds any interest in the Greenbriar house.↩
7. Petitioner and Mr. Doran used a different automobile for this purpose in each of the years at issue.↩
8. Petitioner concedes that the period of limitations for the assessment of tax for 1982 had not expired before respondent issued the statutory notice of deficiency in this case.↩
9. As applicable to the year 1981, sec. 6653(b) provides: Fraud. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *
In sec. 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 616, Congress amended sec. 6653(b). The amendments apply with respect to taxes the last day prescribed for payment of which (regardless of any extension) is after Sept. 3, 1982. Thus, these amendments apply to petitioner's 1982 tax year, and they provide: Fraud. -- (1) In General. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. (2) Additional Amount For Portion Attributable To Fraud. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to fraud, and (B) for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).↩
10. As applicable to petitioner's 1980 tax year, sec. 6653(a) provides: If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.
In sec. 722(b)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 342-343, Congress amended sec. 6653(a). The amendment applies to petitioner's 1981 and 1982 tax year, and it provides: (1) In General. -- If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. (2) Additional Amount For Portion Attributable To Negligence, Etc. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard * * *, and (B) for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax.↩